McCann, J.

Introduction

The plaintiff, Timothy P. Jackson, Jr., is represented by Wayne M. LeBlanc, Esq., Glickman, Sugar-man, Kneeland & Gribouski, 11 Harvard Street, P.O. Box 2917, Worcester, Massachusetts 01613-2917. Plaintiff, Scott, W.F. Jackson, is represented by Bruce E.M. Cunningham, Esq., Cunningham & Cunningham, 45 Linden Street, Worcester, Massachusetts 01608-1812. The plaintiff, Noel S. Jackson, is represented by Donald A. Ball, Esq., Ball & Sargent, P.C., 484 Main Street, Suite 520, Worcester, Massachusetts 01608-1812. The defendants Scott B. Jackson a/k/a Scott B. Jackson, Jay Jackson and Dushane Jackson are represented by Richard T. Tucker, Esq., Bernstein, Burwick & Tucker LLC, 10 Mechanics Street, Suite 150, Worcester, Massachusetts 01608.
The defendants, Bruce S. Bennett and Harry T. Whitin, Trustees, were represented by Mark A. Michelson, Esq., Samuel B. Bruskin, Esq., Karen Collari Troake, Esq., Choate, Hall & Stewart, Exchange Place, 53 State Street, Boston, Massachusetts 02109, until March 22, 2002. On the latter date, a notice of withdrawal of appearance was filed by Attorneys Samuel B. Bruskin and Karen Collari Troake; and pursuant to Mass.R.Civ.P. Rule 11 notice of appearance was filed by Michael P. Angelini, Esq., Bowditch & Dewey, LLP, 311 Main Street, P.O. Box 1516, Worcester, Massachusetts 01608. The defendants, Diane P. Pellegrino and Mary Jackson, are represented by John E. Keenan, Jr., Esq., 95 Elm Street, Worcester, Massachusetts 01609. The defendants Scott B. Jackson, Jay Jackson and Dushane Jackson are represented by Richard T. Tucker, Esq., Bernstein, Burwick & Tucker, L.L.C., 10 Mechanic Street, Suite 150, Worcester, Massachusetts 01608.

PLEADINGS

The Plaintiffs’ Amended Complaint is in the following two counts: Count 1, Breach of Fiduciary Duty against Bruce S. Bennett and Harry Whitin in their capacity as Trustees; Count II, Declaratory Relief against each named defendant for purposes of determining and declaring equitable distribution of the Jackson Family Interim Trust.[3]
An Order for Notice by Publication was issued by the Court[4] and notice by publication was given to the remaining defendants: Dorothea Jackson, Lucille Jackson, Robin Jackson, Jay Jackson, Michael Jackson, Scott Jackson, Harvey Jackson, Dushane B. Jackson, Tommy Jackson, Sherry Jackson, Crystal Jackson, Brian Jackson, Inga Jackson (o/k/a Mark Jackson), David Jackson, Paul Jackson, Lee Jackson and Paula Jackson. An answer was filed by Scott B. Jackson, Jay Jackson and Dushane B. Jackson. No answer has been filed by the others, and no defaults have been entered.
The answer of Bruce S. Bennett and Harry T. Whitin as Trustees is essentially a general denial and raises three affirmative defenses: 1. failure to state a claim; 2. no legally enforceable claim for any specific sum by the individual family members; and 3. excuse.
Bennett and Whitin further filed a counterclaim and a cross claim[5] for interpleader which is alleged in one count and seeks an order that: (1) plaintiffs and other defendants interplead their respective claims; (2) make an order applicable to all claimants who appear in the action; (3) enjoin the plaintiffs and other defendants from bringing action against the Trustee defendants except for the present action; (4) determine which claimants are entitled to what amounts; (5) structure a judgment or order for payment, discharge defendants from liability, award defendants their costs and attorneys fees; (6) discharge defendants from liability; and (7) award costs and attorneys fees.
The answers of Diane P. Pellegrino and Mary Jackson both raise one affirmative defense that distribution should be pursuant to the wrongful death statute in G.L.c. 229.
The defendants Diane P. Pellegrino and Mary Jackson brought a cross claim against the defendants Bruce S. Bennett and Harry T. Whitin in one count for breach of fiduciary duty and a counterclaim against Timothy Jackson, Scott W.F. Jackson and Noel S. Jackson for declaratory relief. The defendants, Scott B. Jackson, Jay Jackson and Dushane Jackson filed an answer of general denial and a request for declaratory relief.
*487 The answer of the defendants Scott P. Jackson, Jay Jackson and Dushane Jackson is a general denial. They filed no counterclaims or cross claims.

SUMMARY STATEMENT OF FACTS

Six Worcester firefighters lost their lives battling a fire at the Worcester Cold Storage and Warehouse building on the evening of December 3, 1999. Among them was Timothy P. Jackson, Sr., who was survived by: his wife, Mary Jackson; his stepdaughter, Diane Pellegrino (Mary Jackson’s daughter from a prior marriage[6]); two sons from his first marriage, Timothy P. Jackson, Jr. and Scott W. F. Jackson; a son from his second marriage, Noel Jackson; his mother, Dorothea Jackson; and numerous cousins, nieces, nephews and other family.[7]
In the months following the fire, the Worcester Telegram and Gazette ("WT&G”) organized a public appeal to raise contributions for the families of the six fallen firefighters. The WT&G organized this appeal through its Charitable Foundation, which it had previously established in 1983. The appeal raised in excess of $6,000,000. The Charitable Foundation earmarked $1,000,000 for the benefit of each firefighter’s family, a total of $6,000,000. The amount in excess of $6,000,000 was allocated to the Worcester Fire Department for safety equipment and other general uses for the Fire Department. The Charitable Foundation Trustees requested the firefighters’ families to identify their family members and determine how the funds would be distributed, rather than the Charitable Foundation having to make such decisions. By the end of the year 2000, five of the six families had reached agreements among themselves and with the Charitable Foundation as to how the funds would be distributed.
The members of Timothy P. Jackson, Sr.’s family were unable to reach a similar agreement among themselves. The Charitable Foundation, therefore, placed the Timothy P. Jackson, Sr. family’s share of $1,000,000 into a newly created and separate trust known as the “Jackson Family Interim Trust” (Interim Trust)[8] until such time as an agreement was reached. The Charitable Foundation, through the law firm of Choate, Hall & Stewart in Boston, informed the family of Timothy P. Jackson, Sr. that as of January 1, 2001, all legal fees incurred in connection with resolving the dispute relating to distribution would be charged against the funds in the Interim Trust. All legal fees incurred by the Charitable Foundation prior to January 1, 2001 were paid using funds other than those raised through the public appeal for the firefighters’ families.
In March of 2001, Timothy P. Jackson, Sr.’s three sons brought suit in Worcester Superior Court against the trustees of the Charitable Foundation and the Jackson Family Interim Trust. The sons requested that the Court determine and order a distribution of the funds in the Jackson Family Interim Trust. The suit alleges that the trustees violated their fiduciary duty by failing to distribute the funds. Upon motion to dismiss by the trustees, the Court, Fecteau, J., entered an order that all parties to the first degree of kindred be named and notified of the suit, or the suit would be dismissed.
As a result of that order, the sons filed an amended complaint in October of 2001, naming nineteen members of the Jackson family as defendants. The trustees of the Charitable Foundation and Jackson Family Interim Trust subsequently answered the amended complaint, in which they cross claimed for inter-pleader and counterclaimed for costs and attorneys fees. Much like the plaintiffs, the trustees similarly request that the Court determine and order a distribution of the funds in the Jackson Family Interim Trust.
Subsequent to all the initial pleadings, other members of the Jackson family named as defendants in the amended complaint have filed answers and brought various motions, counterclaims or cross claims.
Most notably, on December 21, 2001, Mary Jackson, Diane Pellegrino and Timothy P. Jackson, Jr. filed ex parte motions to enjoin any further disbursements from the Jackson Family Interim Trust.[9] These motions followed a letter of November 28, 2001 from Choate, Hall & Stewart informing attorneys for the Jackson family that $241,229.20 in legal fees had been charged against the Jackson Family Interim Trust between January 1, 2001 and October 31,2001. As the Charitable Foundation had informed the Jackson family in November of 2000, all legal fees incurred in connection with settling the Timothy P. Jackson, Jr. family’s $1,000,000 share were charged against that share starting January 1, 2001. According to Choate, Hall & Stewart, the filing of the lawsuit by Timothy P. Jackson, Sr.’s sons in March of 2001 had significantly increased the legal fees incurred by the Charitable Foundation in settling the Jackson matter.
On December 21, 2001, McCann, J., allowed the ex parte motion and ordered that there be no further disbursements from the Jackson Family Interim Trust without prior Court approval. The motions were set down for further hearing on January 25, 2002. In anticipation of that hearing, the Court issued an order, sua sponte, requesting information from the respective attorneys of record. At the hearing on January 25, 2002, Choate, Hall & Stewart declined to produce the records relating to attorneys fees and argued that the Jackson family members lack standing to challenge the handling of the funds (and the charging of legal fees against them) because they are merely potential beneficiaries of the trust. Choate, Hall & Stewart further suggested that the only individual with standing to challenge the trustee’s handling of the trust funds was the Attorney General for the Common *488 wealth of Massachusetts because the funds were part of a charitable foundation.

DISCUSSION

It is the intention of this Court by this order to attempt to assemble expeditiously all of the necessary information to deal with the issues raised by the respective parties so that the family members of the deceased heroes will not become the living martyrs of a contentious legal dispute. With that in mind, this Court attaches the following exhibits which are attached hereto and incorporated herein as those set forth in full:
1. Exhibit A — a comprehensive statement of facts
2. Exhibit B — a listing of chronological events
3. Exhibit C — a chart of relationships
4. Exhibit D — a Jackson family tree
5. Exhibit E — G.L.c. 229, §1 and §2
6. Exhibit F — -G.L.c. 190, §1
The Court perceives two issues in this case:
I: Whether the principal and accumulated income of a charitable foundation trust solicited from the general public for the benefit of a deceased firefighter’s family should be distributed to the deceased firefighter’s family in a method: (a) arbitrarily determined by the trustees; (b) pursuant to the wrongful death statute G.L.c. 229, §2[10] (c) pursuant to the laws of intestate succession G.L.c. 190, §1 et seq.; (d) pursuant to a known intent of Timothy P. Jackson, Sr. as may be evidenced by a will, trust or other document, if any; or (e) by order of the Court after taking into account all of the abovefactors, including the relationship of persons not of kindred, ie; a stepchild.
II. Whether the Attorney General is the exclusive agency to review the accounting of a charitable foundation trust, including but not limited to attorneys fees charged to the trust, the distribution of the net proceeds and accumulated income.
a. Is the Attorney General the appropriate agency to oversee and review the appropriateness of the accounting, including the legal fees charged to a charitable foundation trust.
b. Does the Attorney General stand in the shoes of potential beneficiaries of a charitable foundation trust, as the sole representative of the potential beneficiaries, thus precluding the standing on behalf of the potential beneficiaries to individually contest the appropriateness of attorneys fees to the trust.
c. If the Attorney General determines that the Attorney General is the appropriate agency to oversee and review the administration of the charitable foundation trust, including the payment of attorneys fees, is the Attorney General empowered to defer that oversight to a court entertaining an equity petition related to the trust.
d.May the Attorney General intervene on behalf of a potential beneficiary or beneficiaries of a charitable foundation trust in a Superior Court equity proceeding for the purpose of determining the proper administration of the trust including the payment of attorneys fees.
It is the suggestion of this Court that if all parties agree, this Court would do the following:
If the parties are able to stipulate, the Court would recommend the following action:
1. That the Attorney General determine the issues raised in regard to the charitable foundation trust and that the parties be bound by the determination of the Attorney General.
2. That the parties be given an opportunity to present oral arguments on the issue of how the funds are to be distributed.
The defendant Trustees filed an emergency motion under Rule 16 which was allowed by Murphy, J. A conference date is scheduled on April 25, 2002 at 2:00 P.M., Session B. This order is therefore referred to the Judge presiding in that session for consideration by the Court and the parties.

EXHIBIT A

Comprehensive Statement of Facts The Fire and the Fundraising

1. Six members of the Worcester Fire Department died in the line of duty on December 3, 1999. Jeremiah M. Lucey, Joseph T. McGuirk, Paul A. Brotherton, James F. Lyons, Thomas E. Spencer, and Timothy P. Jackson, Sr. lost their lives battling a fire at the Worcester Cold Storage and Warehouse building at 266 Franklin Street in Worcester.
2. Shortly thereafter, the Worcester Telegram and Gazette Charitable Foundation (“Charitable Foundation”), by and through its Trustees, organized and established a public appeal to raise funds and contributions for the benefit of the families of the six fallen firefighters.[11]
3. At the time the Charitable Foundation organized this public appeal, Bruce S. Bennett and Harry T. Whitin served as Trustees of the Charitable Foundation. The law firm of Choate, Hall & Stewart, 53 State Street, Boston, MA 02109, served as legal counsel to the Charitable Foundation and its Trustees. Attorneys Mark A. Michelson, Samuel B. Bruskin, and Karen Collari Troake of Choate, Hall & Stewart shared primary responsibility for representing the Charitable Foundation and its Trustees.
4. In the months following the fire, the Charitable Foundation received in excess of six million dollars ($6,000,000) in contributions toward the benefit of the deceased firefighters’ families.
5. In May 2000, the Charitable Foundation announced that it would distribute one million dollars ($1,000,000) to or for the benefit of the family of each *489 deceased firefighter. The Charitable Foundation opened six separate accounts at Flagship Bank & Trust Company in Worcester, Massachusetts, depositing one million dollars ($1,000,000) into each account. Remaining funds raised through the public appeal were set aside for other fire-related charitable purposes to be determined at a later date by the Charitable Foundation.
6. The Charitable Foundation requested that each deceased firefighter’s family identify who its members were and determine how its $1,000,000 share of the contributions would be distributed among its members. The Charitable Foundation specifically wished to avoid having to determine who was or was not a member of each firefighter’s family, or how the funds would be distributed among family members.
7. The Charitable Foundation took efforts to assist the families of the six deceased firefighters in reaching agreement among themselves as to how their respective shares would be distributed. The Charitable Foundation’s efforts in this regard incurred legal fees and costs totaling $436,079.44 prior to January 1, 2001. An additional $53,704.87 in legal fees and costs were incurred after January 1, 2001 in connection with the distribution of funds to five of the six families. No portion of these fees and expenses were charged against the funds raised in the public appeal or the interest earned on those funds but were paid by the Telegram and Gazette.

No Agreement with the Jackson Family

8. By November 2000, at least five members of Timothy P. Jackson, Sr.’s family had obtained legal representation with respect to the distribution of funds from the Charitable Foundation. Timothy P. Jackson, Jr. (“Jackson, Jr.”), one of the firefighter’s two sons from his first marriage, is represented by Wayne M. LeBlanc of Glickman, Sugarman, Knee-land & Gribouski, 11 Harvard Street, Worcester, MA 01613.
9. Scott W.F. Jackson, the firefighter’s second son from his first marriage, is represented by Donald A. Ball of Ball & Sargent, 484 Main Street, Suite #520, Worcester, MA 01608.
10. Noel S. Jackson, the firefighter’s son from his second marriage, is represented by Bruce E.M. Cunningham of Cunningham & Cunningham, 45 Linden Street, Worcester, MA 01609.
11. Mary Jackson, the firefighter’s third wife and surviving spouse, and Diane Pellegrino, Mary Jackson’s daughter and the firefighter Timothy P. Jackson, Sr.’s stepdaughter, are represented by John E. Keenan, Jr., 95 Elm Street, Worcester, MA 01609.
12. On November 10, 2000, Attorney Bruskin informed Attorneys LeBlanc, Ball, Cunningham and Keenan of the Charitable Foundation’s intent to transfer the Jackson family’s $1,000,000 share into a separate, taxable trust or other entity by the end of the year 2000.
13. Attorney Bruskin also informed the attorneys that as of January 1, 2001, any further legal fees incurred by the Foundation in resolving matters relating to any particular deceased firefighter’s family would be charged against the specific funds set aside. for that family.[12]
14. By December 5, 2000, the Charitable Foundation had reached agreements with the Lucey, McGuirk, Brotherton, Lyons and Spencer families regarding the distribution of each family’s $1,000,000 share of the contributions. Each family identified who its members were, determined to whom and in what amounts the $1,000,000 would be distributed, and agreed to indemnify the Charitable Foundation against any and all claims by other family members, identified or not.[13]
15. By December 5, 2000, the Charitable Foundation and members of Timothy P. Jackson, Sr.’s family were unable to reach agreement regarding the distribution of the family’s $1,000,000 share of the contributions.
16. On December 18, 2000, the Charitable Foundation established the Jackson Family Interim Trust (“Interim Trust”), naming Bruce S. Bennett as Trustee. The law firm of Choate, Hall & Stewart represented Bruce S. Bennett as Trustee of the Interim Trust, and continued to represent him and Harry T. Whitin as Trustees of the Charitable Foundation.
17. Sometime within the following weeks, the $1,000,000 share of the contributions earmarked for the Jackson family, plus interest, was transferred from the Flagship Bank account to the Interim Trust.
18. The instrument creating the Interim Trust authorized Bruce S. Bennett, as Trustee, to, inter alia, “pay any legal fees and other expenses incurred on or after [January 1, 2001 ] in connection with resolving matters relating to the specific funds set aside for the Jackson family.”
19. Beginning January 1, 2001, all legal fees incurred by the Charitable Foundation in connection with resolving matters relating to the Jackson family’s $1,000,000 share of the contributions were charged against the funds in the Interim Trust.

Litigation Ensues

20. On March 22, 2001, Timothy P. Jackson, Sr.’s three sons (Timothy, Jr., Scott and Noel, collectively referred to as “the plaintiffs”) filed a complaint (“the complaint”) in Worcester Superior Court against Bruce S. Bennett and Harry T. Whitin as Trustees of the Charitable Foundation, and against Bruce S. Bennett as Trustee of the Interim Trust (collectively referred to as “the Trustee defendants”).
*490 21. The complaint alleged that the Trustee defendants breached their fiduciary duties by failing to divide and disburse the funds earmarked for the benefit of the family of the late Timothy P. Jackson, Sr.
22. The complaint requested that the Court “determine and declare an equitable distribution and division” of the funds earmarked for the benefit of Jackson, Sr.’s family, and that the Court further order the defendants to so divide and distribute the funds.
23. On May 16, 2001, the Trustee defendants filed a Motion to Dismiss the complaint for failure to join indispensable parties. The Trustee defendants argued that all members of the late Timothy P. Jackson, Sr.’s family were potential claimants with respect to the funds in the Interim Trust, thus requiring their joinder to the action.
24. On May 16, 2001, the Trustee defendants also moved for leave to file a reply brief to the plaintiff s Opposition to their Motion to Dismiss.
25. The Trustee defendants filed a “Reply Memorandum in Support of Their Motion to Dismiss” on August 8, 2001. After argument on the motion, Justice Fecteau allowed the plaintiffs sixty (60) days to amend their complaint so as to add all persons within the first degree of kinship to the late Timothy P. Jackson, Sr.
26. The plaintiffs filed an amended complaint on October 3, 2001, adding the following persons as defendants: Mary Jackson as Administratrix of the Estate of Timothy P. Jackson, Sr., and as the spouse of the late Timothy P. Jackson, Sr.; Dorothea Jackson; Lucille Jackson; Robin Jackson; Jay Jackson; Michael Jackson; Scott Jackson; Harvey Jackson; Dushane B. Jackson; Tommy Jackson; Sheriy Jackson; Crystal Jackson; Brian Jackson; Inga Jackson o/k/a Mark Jackson; Diane Pellegrino; David Jackson; Paul Jackson; Lee Jackson; and Paula Jackson.
27. The plaintiffs amended complaint raised the same allegations and requested the same relief as the original complaint filed March 22, 2001.
28. To further ensure that all necessary and interested parties were given notice of this action, the plaintiffs caused a Legal Notice to be published on page E6 of the Worcester Telegram & Gazette on Wednesday, December 5, 2001. The notice advised all persons desiring to preserve an interest or assert a claim in this action to file a written appearance by December 31, 2001.
29. Mary Jackson and Diane Pellegrino filed separate but largely identical answers to the amended complaint on October 25, 2001. In their answers, Mary Jackson and Diane Pellegrino averred that the Charitable Foundation had made every reasonable effort to divide and disburse the funds allocated for the appropriate Jackson relatives, but claimed the plaintiffs would not agree to the proposed division of funds.
30. Mary Jackson and Diane Pellegrino denied that the Charitable Foundation had violated any fiduciary duty it may have had to the Jackson relatives.
31. Mary Jackson and Diane Pellegrino suggested that the Court determine an equitable division of the Jackson funds according to the provisions of the Massachusetts Wrongful Death statute, G.L.c. 229, §2.
32. The Trustee defendants filed an answer to the plaintiffs amended complaint on October 25, 2001. The Trustee defendants denied violating their fiduciary duty to the plaintiffs or to any other potential beneficiaries of the Charitable Foundation or Interim Trust.
33. The Trustee defendants stated that the reason why the funds earmarked for the Jackson family had not been divided or distributed was because “there has been no agreement among the members of the Jackson Family as to who are the members of the Jackson Family to whom any distribution should be made, or how much any distribution should be, or on what terms, or any agreement as to these matters by members of the Jackson Family with the Charitable Foundation.”
34. The Trustee defendants’ answer to the amended complaint contained a cross claim for interpleader and a counterclaim for costs and attorneys fees. The Trustee defendants requested, inter alia, that the Court “(djetermine which of the parties to the present action other than these defendants are entitled to payment from the fund, and in what amounts and on what terms.”

The Issue of Legal Fees

35. In a letter dated November 28, 2001, Attorney Bruskin informed Attorneys LeBlanc, Ball, Cunningham and Keenan that between January 1, 2001 and October 31, 2001, $241,229.20 in legal fees had been charged against the funds in the Interim Trust.
36. Attorney Bruskin further stated that “[l]egal fees incurred by the [Charitable] Foundation in connection with the Jackson family matter will continue to be charged against the funds set aside for the Jackson family until the Jackson family dispute has been resolved.”
37. In a letter dated November 30, 2001, Attorney Keenan requested of Attorney Bruskin that he provide details of the Choate, Hall & Stewart bills paid by the Charitable Foundation using funds from the Interim Trust.
38. Attorney Bruskin denied Attorney Keenan’s request in a letter dated December 6, 2001, stating the firm would not provide such details absent formal discovery requests, “followed where necessary by objections and perhaps motions, through which all parties can get the same information, and we can seek the protection of the court if there are disagreements.” Attorney Bruskin also cited the at *491 torney-client privilege and the attorney work product doctrine as additional reasons why Choate, Hall & Stewart would not provide the requested billing information.
39. On December 21, 2001, Mary Jackson and Diane Pellegrino filed an Ex Parte Motion requesting that the Court: (a) temporarily restrain and permanently enjoin Bruce S. Bennett or his successor trustee from making any payments from the Interim Trust; (b) order the legal fees paid to Choate, Hall & Stewart from the Interim Trust returned to the Trust; (c) remove Bruce S. Bennett as Trustee of the Interim Trust; (d) remove Choate, Hall & Stewart as counsel for the Interim Trust; and (e) grant other relief.
40. On December 21,2001, Timothy P. Jackson, Jr. filed an Ex Parte Motion identical in all material respects to Mary Jackson and Diane Pellegrino’s Ex Parte Motion.
41. On December 21, 2001, Justice McCann ordered that, until a hearing on the Ex Parte Motions was held, no further disbursements from the Interim Trust were permitted without the prior approval of the Court. A Short Order of Notice issued on the Ex Parte Motions, returnable January 4, 2002.
42. The Trustee defendants filed an Emergency Motion to Continue Hearing Date on December 24, 2001. By agreement of all parties, the January 4, 2002 hearing on the Ex Parte Motions was continued to January 25, 2002.
43. In preparation for the January 25, 2002 hearing on the Ex Parte Motions, Justice McCann issued a Sua Sponte Order on January 11, 2002, directed toward the Trustee defendants, the plaintiffs, and Mary Jackson and Diane Pellegrino.
44. The Sua Sponte Order directed the Trustee defendants to provide the following to the Court by January 17, 2002: (a) a copy of the instrument setting forth the terms and provisions of the Charitable Foundation; (b) copies of any fund-sharing agreements with the respective families of Paul Brotherton, Jeremiah Lucey, Joseph McGuirk, James Lyons, and Thomas Spencer, related to the disbursement and distribution of funds from the Foundation, including any provisions regarding the Foundation’s liability for future claims against said funds; (c) copies of all documentation, including but not limited to invoices, bills, vouchers, and/or other supporting documents, regarding the legal fees paid by the Worcester Telegram and Gazette, the Charitable Foundation, the Interim Trust, and/or any affiliates thereof, to the law firm of Choate, Hall & Stewart and/or anyone working on behalf of the firm, for any and all work performed regarding the Charitable Foundation and the Interim Trust, from 1999 to date; and (d) a full accounting of the funds designated for the family of the late Timothy P. Jackson, Sr. by the Charitable Foundation and the InterimTrust, includingbutnot limited to anyinterest and/or income earned thereon from date of inception to date, as well as any and all disbursements made from the funds.
45. The Sua Sponte Order further directed Choate, Hall & Stewart to provide to the Court by January 17, 2002, copies of all billing records related to the Interim Trust, including but not limited to any computer printout records reflecting billing by hours or other increments for each attorney, or any comparable records, and copies of any actual bills rendered.
46. The Sua Sponte Order further directed counsel for Timothy P. Jackson, Jr., Scott W.F. Jackson, Noel Jackson, Mary Jackson, and Diane Pellegrino, as officers of the Court, to file the following with the Court by Thursday, January 17, 2002: (a) a return of service of the November 26, 2001 Order for Publication; (b) copies of any and all wills, trust instruments, or documents of any similar nature, of Timothy P. Jackson, Sr., whether revoked or in effect, if any.
47. In response to the Sua Sponte Order, the plaintiffs provided a return of service of the November 26, 2001 Order for Publication to the Court. The plaintiffs also informed the Court that to their knowledge Timothy P. Jackson, Sr. died without a will, trust instrument, or any similar documents.
48. In response to the Sua Sponte Order, Mary Jackson and Diane Pellegrino likewise informed the Court that to their knowledge Timothy P. Jackson, Sr. died without a will, trust instrument, or any similar documents.
49. In response to the Sua Sponte Order, the Trustee defendants provided a copy of the Trust Agreement of the Worcester Telegram & Gazette Charitable Foundation to the Court. The Trustee defendants also provided copies of the “Representations, Indemnification, Release and Waiver” agreements between the Charitable Foundation and the respective families of Paul Brotherton, Jeremiah Lucey, Joseph McGuirk, James Lyons and Thomas Spencer. The Trustee defendants did not provide the exhibits to said agreements in the interests of confidentiality, but indicated that they would do so if specifically directed by the Court.
50. The Trustee defendants declined to comply further with the Sua Sponte Order, and did not provide billing information regarding the Interim Trust or an accounting of the Interim Trust. The Trustee defendants cited several reasons and concerns for not fully complying with the Order: (a) no party had sought written discovery in the case; (b) the attorney-client privilege; (c) the work product doctrine; (d) the requested documents were privileged and confidential; (e) the Sua Sponte Order in effect granted portions of the Ex Parte Motions before oral argument on the Motions had occurred.
*492 51. After the hearing on the Ex Parte Motions on January 25, 2002, Justice McCann extended the prohibition against further disbursements from the Interim Trust without prior' approval of the Court.

Additional Filings-

52. On January 10, 2002, Defendants Mary Jackson and Diane Pellegrino filed separate but largely identical amended answers to the plaintiffs’ amended complaint. Each defendant brought a cross claim against Bruce S. Bennett and Harry T. Whitin as Trustees of the Charitable Foundation, and a counterclaim against the plaintiffs.
53. In Mary Jackson’s and Diane Pellegrino’s respective counterclaims against the plaintiffs, they allege that the plaintiffs’ commencement of litigation against the Trustee defendants resulted in a diminution of the funds earmarked for the Jackson family.
54. Mary Jackson and Diane Pellegrino request that the legal fees charged against the Interim Trust be deducted from the share of the funds are ultimately allocated to the plaintiffs.
55. Mary Jackson and Diane Pellegrino further request that when their respective shares of the Interim Trust are determined, the dollar amount of those shares be calculated on the basis of $1,000,000 plus accrued interest, minus any taxes.
56. On January 22, 2002, defendants Scott Jackson, Jay Jackson and Dushane B. Jackson answered the plaintiffs’ amended complaint. These defendants essentially aligned themselves with the plaintiffs with respect to the allegations made and relief sought in the amended complaint.
57. On January 31, 2002, the Trustee defendants filed a motion to strike Mary Jackson’s and Diane Pellegrino’s amended answers, counterclaims and cross claims. No action has been taken on that motion to date.
58. On March 22, the firm of Choate, Hall & Stewart withdrew as counsel of record and Michael P. Angelini, Esq. of Bowditch & Dewey, LLP, 311 Main Street, P.O. Box 15156, Worcester, Massachusetts, 01608, filed a notice of appearance on behalf of the defendants Bruce S. Bennett and HarryT. Whitin, trustees of the Worcester Telegram and Gazette Charitable Foundation and Bruce S. Bennett, trustee of the Jackson Family Interim Trust.
59. Miscellaneous correspondence was filed with the court between March 22, 2002 and March 27, 2002 from Michael P. Angelini, John E. Keenan, Jr. and Vincent J. O’Rourke. Jr. which this Court has disregarded.

EXHIBIT B

[Editor’s Note: Exhibit B, a chonology of events, is not included in the reported opinion. ]

EXHIBIT C

[Editor’s Note: Exhibit C, a list of the Jackson family members and their counsel, is not included in the reported opinion.]

EXHIBIT D

[Editor’s Note: Exhibit D, the Jackson family tree, is not included in the reported opinion.]
EXHIBIT E — G.L.c. 229, §1 AND §2
[Editor’s Note: Exhibit E, the text of the above statute, is not included in the reported opinion.]
EXHIBIT F — G.L.c. 190, §1
[Editor’s Note: Exhibit F, the text of the above statute, is not included in the reported opinion.]

 An Answer has been filed on behalf of Bruce S. Bennett, Harry T. Whitin, Mary Jackson and Diane Pellegrino.

 Issued as a result of the Order of Fecteau, J. dated August 8, 2001.

 Filed as one combined claim in one count.

 Timothy P. Jackson had an eight year step-parent relationship with Diane Pellegrino.

 See Exhibits “C” and “D” appended hereto.

 This was a newly created trust for this specific purpose.

 One million dollars had been set aside in this trust. Since that time, no distribution to beneficiaries has been made. However, since that time, the firm of Choate, Hall & Stewart has charged $241,229.20 in legal fees against the Interim Trust. Of that amount, approximately $205,000 has been paid. Approximately $36,000 remains unpaid against that bill. It is not known by this Court what additional fees, if any, have accrued or are claimed to have accrued by the firm of Choate, Hall & Stewart.

 An April 11, 2002 Worcester Telegram and Gazette article reported that the families of Thomas E. Spencer, Timothy P. Jackson, Paul A. Brotherton and Jeremiah M. Lucy have brought a civil action against the owner of the property Tony Kwan although there is no record of such suit in the Worcester Superior Court Dockets.

 The Charitable Foundation was established in 1983.

 $53,704.87 in legal fees incurred by the Charitable Foundation after January 1, 2001, were not charged against the funds set aside for the deceased firefighters’ families (see ¶7, supra). These fees were incurred in effectuating the agreements reached by the five families during the year 2000.

 Copies of those agreements are confidential. They were produced for the Court as a result of the Sua Sponte Order. The Court impounded those agreements in view of the confidentiality agreement among the parties.